**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiff and the*
*putative FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINDITA MACUKU, Individually and on Behalf of All Others Similarly Situated,**  **Plaintiff,**  -against-  **MILL-RUN TOURS, INC. d/b/a MILL-RUN TOURS, and ISSAM SAWAYA, Jointly and Severally,**  **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**  **Jury Trial Demanded** |

Plaintiff Lindita Macuku (the "Plaintiff"), individually and on behalf of all others similarly situated, through her attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff is a former Travel Professional and/or Travel Agent at the New York City division of Defendants' travel agency. During the relevant time period, Plaintiff received a flat salary on a bi-weekly basis for all hours worked, which did not compensate her the statutorily

1

required minimum wage rates or provide overtime premiums for hours worked over forty (40) in a given workweek.

2. Plaintiff brings this action to recover unpaid minimum wages and overtime premium pay owed to her pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3. Plaintiff brings her FLSA claims on behalf of herself and all other similarly situated employees of Defendants and her NYLL claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of all Travel Professionals and/or Travel Agent employees working for Defendants during the relevant time period.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive

Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiff:**

8. <u>Plaintiff Lindita Macuku</u> ("Macuku") was, at all relevant times, an adult individual residing in the Bronx, State of New York.

9. Throughout the relevant time period, Plaintiff performed work for Defendants at their travel agency located at 424 Madison Avenue, Floor 12, New York, NY 10017.

10. Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §

216(b), and her consent form is attached hereto.

**Defendants:**

11.     Mill-Run Tours, Inc. is an active New York corporation doing business as "New Mill-Run Tours" with a New York State Department of State Process address and principal place of business at 424 Madison Avenue, Floor 12, New York, NY 10017.

12.     Mill-Run Tours, Inc. is hereinafter referred to as "Mill-Run Tours" or the "Corporate Defendant."

13.     Upon information and belief, Defendant Issam Sawaya ("Sawaya" or the "Individual Defendant" and, together with the Corporate Defendant, the "Defendants") is an owner, officer and operator of the Corporate Defendant, serving multiple roles in the company's management team including but not limited to President and Chief Executive Officer.

14.     The Individual Defendant maintains operational control over the Corporate Defendant by actively being present at the Corporate Defendant's principal place of business, instructing and supervising employees throughout their daily shifts, determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing and moreover exercising the authority to hire and fire employees, including Plaintiff.

15.     The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiff and the Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

16. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

17. At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

18. At all relevant times, Plaintiff, the opt-in Plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

19. Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20. Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings her First and Second Causes of Action as a collective action under the FLSA on behalf of herself and the following collective:

> All persons employed by Defendants at any time since March 23, 2018 and through the entry of judgment in this case (the "Collective Action Period") who worked as Travel Professionals and/or Travel Agents (the "Collective Action Members").

21. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

5

22.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

23.     Pursuant to the NYLL, Plaintiff brings her Third through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All persons employed by Defendants in New York at any time since August 7, 2014 and through the entry of judgment in this case (the "Class Period") who worked as Travel Professionals and/or Travel Agents (the "Class Members").

24.     <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

25.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

26.     Upon information and belief, there are in excess of forty (40) Class Members.

27.     <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

   a. whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

   b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

   c. whether Defendants failed and/or refused to pay Plaintiff and the Class Members minimum wage for all hours worked;

  d. whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

  e. whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

  f. whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

  g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

28. <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, are employees of Defendants who worked as Travel Professionals and/or Travel Agents and who were subjected to Defendants' corporate pay policies. Plaintiff, like all Class Members, was, *inter alia*, paid less than the statutory minimum wage for all hours worked, was not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, was not paid spread-of-hours premiums for shifts and/or split shifts in excess of ten (10) hours, and did not receive proper wage statements and wage notices.

29. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

30. <u>Plaintiff and her Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover her own damages.

31. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

33. Defendants are sophisticated parties with substantial resources. The individual Plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

34. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Travel Agency Business**

35. Mill-Run Tours identifies as a premier airline consolidator for traditional and home-based agencies of all sizes providing an array of travel services including, but not limited to, corporate and individual travel, religious and group travel options and customized itineraries, corporate concierge and leisure premium services, amongst other services. (https://www.millrun.com/Religious-and-Group-Travel).

36. Upon information and belief, the Individual Defendant has owned and operated Mill-Run Tours since its founding in 1974.

37. Upon information and belief, at all relevant times, the Individual Defendant has operated Mill-Run Tours through the corporate entity Mill-Run Tours, Inc.

38. Mill-Run Tours has expanded from its main office in New York City, to several branches in different states, and is home to "200 pro travel agents", assisting its business growth and development. (https://www.millrun.com/About-us/Our-History).

39. Upon information and belief, during the relevant time period, Mill-Run Tours, Inc. has employed at least at least one hundred (100) travel agents at its New York City division.

40. Upon information and belief, the Individual Defendant is a constant presence at Mill-Run Tours' NYC office and is actively engaged in supervising employees and the management of the business.

41. Upon information and belief, at all times relevant, the Individual Defendant has exercised his authority over payroll and personnel decisions at Mill-Run Tours, including the power to hire and fire employees, deciding promotions or position changes, set their wages, communicating individual employee needs with other Managers, maintaining time and/or wage records, and otherwise controlling the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

42. Plaintiff Macuku was employed by Defendants as a Travel Professional/Agent at their New York City office from on or about June 7, 2003 through on or about July 31, 2020 (the "Macuku Employment Period").

43. From in or around March 2020 through her termination, Plaintiff Macuku was permitted to work remotely from home due to the Covid-19 Pandemic.

44. In the position of Travel Professional, Macuku's responsibilities included booking travel itinerary for clients, engaging new clients and promoting and providing airline services and promotion offers to clients, attending meetings with airline representatives to obtain knowledge of

their updated services and itinerary options, coordinating travel itineraries for clients and canceling and rescheduling itineraries as needed, amongst other tasks.

45. Throughout the Macuku Employment Period, Macuku and other employees reported all employment issues and concerns to the Individual Defendant and the Defendants' management team, which included an individual named "Rosario", "Pierre Aziv", "Rajni", and "Sachin".

46. Throughout the Macuku Employment Period, Macuku typically worked five (5) days per week, from approximately 9:00 am to approximately 6:00 pm, nine (9) hour shifts per day, for a total of approximately forty-five (45) hours per week.

47. From the start of her employment until she was terminated in or around July 31, 2020, Macuku was paid flat salary of $850.00 on a bi-weekly basis (or $425.00 per week), in compensation for her work. At no point did Plaintiff Macuku receive any additional compensation in tips or commissions..

48. When Plaintiff Macuku's bi-weekly pay is divided by the number of hours that she worked during each pay period, her hourly rate falls below the applicable minimum wage.

49. Despite the fact that she regularly worked in excess of forty (40) hours in a given workweek, Plaintiff Macuku was never paid overtime premiums equal to one and one-half (1.5) times her regular rate for hours worked over 40.

50. Although Plaintiff Macuku was instructed by management that she was permitted to take an uninterrupted lunch break of between thirty (30) minutes plus an additional fifteen (15)-minute break during the day, during several shifts each week, she was not able to take her full uninterrupted breaks, usually when she was required to complete service for her clients and ensure

that their full travel itinerary and electronic bookings had been coordinated or updated.

51.     Throughout her employment, although Plaintiff Macuku received paystubs listing her bi-weekly flat salary of eight-hundred fifty dollars ($850.00), at no point did her paystubs record the number of hours she worked each week during each pay period.

52.     At no point during the Macuku Employment Period, did Defendants utilize any timekeeping system that would have properly recorded Plaintiff Macuku's hours worked. Plaintiff Macuku was never required to sign any timesheet at the start or end of her shifts, nor was she required clock-in and clock-out of any timekeeping system.

53.     On Friday July 31, 2020, Plaintiff Macuku received an email from Rajni Shivdasani, the Executive Administrative Assistant of Defendant Sawaya, informing her that she was terminated by Management due to the Covid-19 Pandemic, as a necessary reduction in the Defendants' workforce. Since receiving this email, Plaintiff Macuku has not been contacted to resume her employment with Defendants.

**Defendants' Unlawful Corporate Policies**

54.     Plaintiff and the Collective and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums.

55.     Defendants' failure to pay Plaintiff minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

56.     Defendants' failure to pay Plaintiff overtime premiums is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period,

11

since most, if not all, of their non-management employees are paid on a flat rate salary basis.

57. Defendants have not provided Plaintiff or Class Members with proper statement of wages containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per pay period, including overtime hours worked if applicable; deductions; and net wages.

58. Defendants have not provided Plaintiff or Class Members with proper wage notices at the time of hire or by February 1 of each year or when their wage rate(s) changed.

59. Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require minimal skill and schooling and no capital investment.

60. Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week. Additionally, such individuals were not provided wage notices at hiring, by February 1 of each year, or when their wage rate(s) changed, or proper and accurate wage statements with their wage payments on a biweekly basis.

61. Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiff and the Collective Action Members)

62. Plaintiff, on behalf of herself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

63. By failing to pay Plaintiff and the Collective Action Members minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

64. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

65. Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

66. Plaintiff, on behalf of herself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

67. By failing to pay Plaintiff and the Collective Action Members overtime at a rate not less than one and one-half (1.5) times their regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

68. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

69. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiff and the Class Members)**

70. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

71. Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

72. Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
(Brought on Behalf of Plaintiff and the Class Members)

73. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74. Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

75. Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
(Brought on Behalf of Plaintiff and the Class Members)

76. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77. Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

78. Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

i.  An award of prejudgment and post-judgment interest;

j.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

k.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
March 23, 2021

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton
pelton@peltongraham.com
Taylor B. Graham
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of MILL-RUN TOURS, INC. are hereby notified that the Plaintiff in this matter, individually and on behalf of the putative FLSA collective and the Class she seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of MILL-RUN TOURS, INC., and charge you with indebtedness of said corporation to the Plaintiff for services performed for the corporation as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporation was terminated on or about January 27, 2021, within the statutorily-required 180 days.

Dated:  March 23, 2021

_____
Brent. E. Pelton

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **Mill-Run Tours, Inc., Issam Sawaya** and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other potential plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:
*Lindita R Macuku*
———————————————
13DBFF969FAB44A...
Signature

Lindita R Macuku
———————————————
Printed Name