# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

November 29, 2021

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Magistrate Judge Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *Lindita Macuku v. Mill-Run Tours, Inc. et al.*
             Civil Action No. 21-cv-02505 (RA)(OTW)

Dear Judge Wang:

      This office represents plaintiff Lindita Macuku ("Macuku" or the "Plaintiff"). We write, jointly with counsel for Mill-Run Tours, Inc. d/b/a Mill-Run Tours, and Issam Sawaya (the, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and the Court's October 15, 2021 Order (Dkt. No. 18). Counsel for the parties respectfully submit that the Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.)[1] constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.    Background and Procedural History**

      Plaintiff commenced this Action by filing a Class & Collective Action Complaint against Defendants in this Court on March 23, 2021. (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on May 13, 2021, denying all material allegations. (Dkt. No. 10 (the "Answer")).

      On May 14, 2021, pursuant to the SDNY Pilot Program for FLSA cases, this matter was referred to mediation and ultimately assigned to mediator Antony DiCaprio, Esq. and the Parties were ordered to exchange pre-mediation discovery, including existing documents describing Plaintiff's duties and responsibilities, any existing records of wages paid to, and hours worked by Plaintiff, a spreadsheet of alleged underpayments and other damages, documents describing compensation policies or practices, and proof of Defendants' financial condition. (Dkt. No. 11). Pursuant to Judge Abrams' Order, Plaintiff exchanged records including certain paystubs Plaintiff received during her employment with Defendants, as well as the termination email Plaintiff received from Defendants in July 2020. Defendants also produced payroll records and W-2

---

[1] The attached Settlement Agreement has not yet been signed by Defendants. Once Defendants have signed, the parties will file the fully-executed version with the Court.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Hon. Ona T. Wang
Joint FLSA Settlement Fairness Letter
Page **2** of **6**

Statements starting in 2018, business tax returns and bank statements for the Corporate Defendant, and copies of two (2) Out-Source Agreements entered into between Defendants and two (2) distinct New Delhi, India Corporations in 2015 and 2018, respectively, for after-hour call center support services.

After a half-day of negotiations at mediation on October 1, 2021, the parties agreed to adjourn for a second session in order to engage in further discussions with respect to Defendants' financial condition. The parties held a second mediation session on October 8, 2021, during which they were able to reach a settlement in principle. Over the next several weeks, the parties negotiated the remaining terms of the settlement which were memorialized in the parties' Settlement Agreement and Wage and Hour Release (the "Settlement Agreement"). (Pelton Aff. Ex. A.).

**II.     The Settlement Accounts for Litigation Risk**

Throughout the litigation, the parties have disputed several issues of fact concerning Plaintiff's employment with Defendants. Specifically, Plaintiff alleges that throughout her employment she worked (5) days per week, from approximately 9:00 a.m. to approximately 6:00 p.m., for a total of approximately forty-five (45) hours per week, and occasionally worked more hours. Defendants dispute that Plaintiff worked any overtime hours and assert she was hired as a "part-time" employee who worked daily from 10:00 a.m. to 5:00 p.m., with a 45-minute lunch break. Plaintiff also alleged that throughout her employment period her schedule was unchanged, except during the COVID-19 Pandemic period between March 2020 until her termination on July 30, 2020 when she was encouraged by her supervisors to work beyond her scheduled hours given that she was working remotely from home, and that prior to the pandemic Defendant Sawaya closed the office at the end of each shift (at or around 6:00 p.m.) and dismissed all workers including Plaintiff. Defendants did not maintain a formal timekeeping system to track the actual hours worked by Plaintiff, such that her hours are heavily disputed between the parties. For her work, throughout her employment with Defendants, Plaintiff was paid a fixed bi-weekly salary of eight hundred fifty dollars ($850.00), such that Plaintiff's wages fell below the minimum salary threshold for exempt employees and the minimum wage for certain years during the statutory period, and which did not include overtime premiums for any hours worked over 40 in a week. Defendants assert that Plaintiff did not work over 40 hours in a week and is therefore not entitled to overtime damages, and further that the fixed salary paid her at least minimum wage.

Defendants' financial condition was also in dispute between the parties. While Defendants alleged that their business had been decimated by the pandemic, as well as the increasing prominence of online travel websites, such that they are on the verge of shutting down the business, Plaintiff believes that Defendant Sawaya has substantial assets which would be available to pay any judgment or settlement, based on his alleged role as an employer. Defendants exchanged with Plaintiffs' counsel financial records and bank statements to support their alleged financial hardship. Although the parties dispute Defendants' ability to pay a substantial settlement, after substantial negotiations over two mediation sessions, Plaintiff believes that it is in her best interest to settle now to avoid anticipated burdens and expenses associated with further litigation, including possible bankruptcy litigation for the corporate defendant, and future risks if this matter were to proceed through formal discovery and ultimately trial. Plaintiff has also expressed her satisfaction

Hon. Ona T. Wang
Joint FLSA Settlement Fairness Letter
Page **3** of **6**

with the mediation process during both sessions, which was facilitated by the multiple discussions counsel held with a neutral mediator and arm's-length negotiation amongst counsel.

Prior to the mediation session, Plaintiff's counsel exchanged a damages analysis based on her alleged hours worked and wages received. Plaintiff's counsel's analysis reflected $120,983.62 in total damages, which amount includes $20,182.32 in unpaid minimum wages, $28,660.92 in unpaid overtime premiums, $5,000.00 in wage statement damages, $48,843.24 in liquidated damages (100% of unpaid wages), and $18,297.14 in pre-judgment interest on Plaintiff's NYLL claims.

Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that she would receive much lower damages, or nothing at all. As mentioned above, the parties have disputes as to the facts and merits of Plaintiff's claims, particularly as to the hours worked by Plaintiff. Accordingly, Plaintiff prefers to settle now for an amount that she would be guaranteed to receive under the terms of the settlement.

The parties believe that the settlement amount (i.e., $55,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial, as it represents 74% of her "actual" minimum wage and overtime damages.

**III.   Settlement Terms**

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total amount of $55,000.00 (the "Settlement Amount"), inclusive of attorney's fees and costs. Of the Settlement Amount, $18,746. 65 is payable to Plaintiff's counsel (consisting of $620.00 in expenses and $18,126.65 in attorneys' fees). The remaining $36,253.35 is payable directly to Plaintiff (the "Net Settlement Amount").

In keeping with the trend in this circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the claims and defenses presented in this Action or Settlement.

The Agreement also includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.,* No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement clause is mutual and binds Plaintiff and Defendant. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement provisions. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual a non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement provision contains a "carve-out" clause permitting the Parties to make truthful statements regarding their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA and Defendants' interests in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 ( S.D.N.Y. April 4, 2016) (approving a bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. Dist. LEXIS 29158 at *6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal a non-disparagement clause with a "carve-out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving a non-disparagement provision that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The parties are represented by experienced counsel who have advised them prior to executing the Settlement Agreement on the significance of the settlement terms and potential implications, including the release terms and non-disparagement clause. Further, the mutual non-disparagement clause is bolstered by additional provisions that provide preliminary steps prior to either party exercising their right to commence an action in the event of a breach of the agreement in an agreed-upon forum.

### IV.   Plaintiff's Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., to date, Plaintiff's counsel has spent more than 75 hours in prosecuting and settling this matter, resulting in a lodestar of $23,026.90. Pelton Aff. Ex. C. Plaintiff's counsel has spent $620.00 in actual litigation costs, including filing and service of the complaint. *Id*. at Ex. D. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $18,126.65) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs which represents less than the lodestar amount and is

Hon. Ona T. Wang
Joint FLSA Settlement Fairness Letter
Page **5** of **6**

consistent with what was agreed upon between the Plaintiff and their counsel in their retainer agreement.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and profession focus in the Southern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Southern District. *See, e.g., Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Similar rates are within the range paid to attorneys of similar experience and professional focus in the Southern Districts of New York, including in FLSA/NYLL actions. *See*, *e.g.*, *Guallpa v. NY Pro Signs, Inc.*, No. 11-cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41 (S.D.N.Y. Apr. 30, 2014) (finding reasonable hourly rates of $550 for senior partner and $350 for attorney identified as "counsel"). Accordingly, Plaintiff's counsel submits that the attorneys' fees component of the settlement are fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to Plaintiff's counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principle question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreach" by the employer because she is no longer employed by Defendants and the proposed Settlement Agreement was reached only after two (2) mediation sessions before a neutral mediator and resulted from vigorous arm's-length negotiations and contentions over Plaintiff's claims and Defendants' contentions. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks and obstacles of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including disputed merits issues. Due to disputed issues of fact, the parties would likely need to engage in further formal discovery including depositions, as well as motion practice including conditional collective and class certification, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any question regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Brent E. Pelton* | By: */s/ Eli Freedberg* |
| Brent E. Pelton, Esq. | Eli Freedberg, Esq. |
| Taylor B. Graham, Esq. | **Littler Mendelson, P.C.** |
| **PELTON GRAHAM LLC** | 900 Third Avenue, Suite 401 |
| 111 Broadway, Suite 1503 | Long Island City, New York 10022 |
| New York, New York 10006 | |
| | *Attorneys for Defendants* |
| *Attorneys for Plaintiff* | |

Encls.