UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

LINDITA MACUKU, et. al.,

                Plaintiff,

       -against-

MILL-RUN TOURS, INC., et al.,

                Defendants.

---------------------------------------------------------------x

21-CV-2505 (OTW)

**OPINION & ORDER**

**ONA T. WANG**, **United States Magistrate Judge**:

      Plaintiff brings this action under the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL") for Defendants' failure to pay minimum and overtime wages and failure to provide wage statements and notices. (ECF 1 at 2). Defendants employed Plaintiff at their travel agency, Mill-Run Tours. (ECF 1 at 8). The parties submit their proposed FLSA settlement agreement to the Court for approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF 22). After the parties submitted their *Cheeks* papers, they consented to my authority to conduct all proceedings in the case. (ECF 24). Having reviewed the parties' submissions, for the reasons below, I find that the settlement is fair and reasonable.

**I.    Background**

      Plaintiff was employed by Defendants as a travel agent at their New York City office from on or about June 7, 2003 through on or about July 31, 2020. (ECF 1 ¶ 42). Plaintiff alleges that her work responsibilities included booking travel itineraries for clients, engaging new clients, promoting and providing airline services and promotion offers to clients, attending

meetings with airline representatives, and coordinating travel itineraries for clients. (ECF 1 ¶ 44). Plaintiff alleges that she never received any additional compensation in tips or commissions during her employment. (ECF 1 ¶ 47). Plaintiff further alleges that she regularly worked in excess of 40 hours per workweek, without appropriate minimum wage and overtime compensation. (ECF 1 ¶ 48). Plaintiff further alleges that Defendants failed to maintain accurate recordkeeping of hours worked by Plaintiff, and failed to pay her appropriately for her time, either at the straight rate of pay or for any additional overtime. (ECF 1 ¶ 52, 48-49). In addition, Plaintiff alleges that Defendants maintained a corporate policy of failing to pay minimum wages and overtime premiums. (ECF 1 ¶ 54-56).

Plaintiff filed her Complaint on March 23, 2021, suing for unpaid minimum and overtime wages pursuant to the FLSA, and for violations of the NYLL, including liquidated damages, interest, attorneys' fees and costs. (ECF 1).

## II.  Discussion

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will recommend approval of such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing

their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

### a) Range of Recovery and Litigation Risks

Under the proposed settlement agreement, Defendants would pay $55,000.00, distributing $36,253.35 to Plaintiff and $18,746.65 to Plaintiff's counsel.[1] Plaintiff calculated that she would be entitled to $120,983.62 if she won after trial.[2] Plaintiff's take-home amount of $36,253.35 represents only approximately 30% of her potential recovery, but approximately 67% of her unpaid wages, overtime, and wage statement damages. (ECF 22 at 3). Although Plaintiff is accepting a smaller percentage than her claimed recovery, courts may approve lower settlement percentages where there are significant barriers to prevailing at trial, *e.g.*, conflicting evidence. *See Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving 25% of maximum recovery).

Here, Plaintiff acknowledges that "the parties have disputed several issues of fact concerning Plaintiff's employment with Defendants." (ECF 22 at 2). Specifically, "Defendants dispute that Plaintiff worked any overtime hours and assert she was hired as a 'part-time' employee who worked daily from 10:00 a.m. to 5:00 p.m., with a 45-minute lunch break." (ECF

---

[1] Plaintiff's counsel's *Cheeks* submission states that they seek $18,126.65 in fees and $620 in costs, totaling $18,746.65 (approximately 34% of the total award). (ECF 22 at 3, 4).

[2] Unpaid minimum wages ($20,182.32) + overtime ($28,660.92) + wage statement damages ($5,000) + liquidated damages on wages ($48,843.24) + pre-judgment interest on Plaintiff's NYLL claims ($18,297.14) = $120,983.62. (ECF 22 at 3).

22 at 2). Defendants' financial condition was also in dispute between the parties, with Plaintiff asserting that Defendant Sawaya has "substantial assets" available to him to pay any judgment or settlement. Defendants, in turn, maintain that they are in such dire financial straits that they are on the brink of closing the business. (ECF 22 at 2). Because of these disputed issues of fact, Plaintiff represents that it is in her best interest to settle now to avoid the risks associated with further litigation. (ECF 22 at 2). That Plaintiff would still receive more than half of her claimed unpaid wages and overtime supports finding the settlement amount as fair and reasonable.

### b) Arm's Length Negotiation

The parties represent that the settlement was the product of two mediation sessions, brought under the SDNY Mediation Program. (ECF 22 at 1). The parties exchanged pre-mediation discovery, including existing documents describing Plaintiff's duties and responsibilities, any existing records of wages paid to, and hours worked by Plaintiff, a spreadsheet of alleged underpayments and other damages, documents describing compensation policies or practices, and proof of Defendants' financial condition. (ECF 22 at 1-2). The parties represent that they were able to reach a settlement in principle at their second mediation session, held on October 8, 2021, and negotiated the remaining terms of the settlement over the following weeks. (ECF 22 at 1).

### c) Risk of Fraud or Collusion

There is nothing in the record to suggest that fraud or collusion played a role in the settlement.

### d) Settlement Agreement Provisions

This agreement includes a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties did not include a confidentiality provision and have included specific language in the Agreement indicating that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the claims and defenses in the Action. (ECF 22 at 3). The Agreement does include a mutual non-disparagement provision between Plaintiff and Defendants. While Courts have sometimes found one-sided non-disparagement provisions objectionable, the non-disparagement clause in this Agreement is permissible because it is mutual and allows the parties to make truthful statements regarding their experiences in the litigation. (ECF 22 at 3-4). *See, e.g, Chowdhury v. Brioni Am., Inc.,* No. 16 CIV. 344 (HBP), 2017 WL 5953171, at *6 (S.D.N.Y. Nov. 29, 2017) (approving FLSA settlement agreement where mutual non-disparagement clause included a carve out for truthful statements about the litigation); *Romero v. ABCZ Corp.*, No. 14 CIV. 3653 (HBP), 2017 WL 2560004, at *4 (S.D.N.Y. June 12, 2017) (finding that "[b]ecause [the settlement agreement] includes a carve-out for truthful statements about the litigation, it too is permissible"). Accordingly, the Court finds that the mutual non-disparagement provision is reasonable and not contrary to public policy.

### e) Attorneys' Fees

The attorneys' fees and costs award of $18,746.65 is reasonable here. It represents 34%, or about 1/3, of the total settlement amount. It is less than the lodestar amount of $23,026,90, and includes $620.00 in actual litigation costs. Attorneys' fees minus costs are $18,126.65, which represent 32.9% of the settlement. (ECF 22 at 4). Although there is not a proportionality

requirement, attorney fees' settlements generally amount to one third of the settlement award.[3] *See, e.g.*, *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848 (KBF), 2017 WL 2266874, at *5 (S.D.N.Y. May 23, 2017) ("In this Circuit, courts typically approve attorneys' fees that range between 30 and 33 1/3 %.").

This case settled eight months after the Complaint was filed. Plaintiff's counsel, Pelton Graham LLC, spent 75.6 hours on the action. (ECF 23 at 5). The parties exchanged moderate discovery, engaged in two mediation sessions, and finalized settlement terms over several weeks. (ECF 23-3 at 10). Hourly billing rates utilized by Plaintiff's counsel are within the range paid to attorneys of similar experience in similar cases. *See, e.g.*, *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates); *Guallpa v. NY Pro Signs, Inc.*, No. 11-cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*, No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41 (S.D.N.Y. Apr. 30, 2014) (finding reasonable hourly rates of $550 for senior partner and $350 for attorney identified as "counsel"). Given the effort expended in the case, the fact that the attorneys' fees and costs are less than the lodestar amount, and that Plaintiff's counsel's billing

---

[3] In *Fields v. Kijakazi*, the Second Circuit warned courts that they may not deny an award of attorneys' fees in Social Security cases because the requested fee is a windfall, unless it is "truly clear that the fee is unearned by counsel." 24 F.4th 845, 849 (2d Cir. 2022). It is not clear to what extent the ruling in *Fields* applies to attorneys' fees requested under *Cheeks* settlements. In any event, I do not find that the attorneys' fees at issue in this case are unreasonable or amount to a windfall for Plaintiff's counsel.

rates are standard, I find that the amount of attorneys' fees and costs is appropriate and reasonable.

III.     **Conclusion**

For the foregoing reasons, I find the parties' proposed settlement agreement as fair and reasonable.

**SO ORDERED.**

Dated: June 3, 2022
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge